USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-15-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALLAN DE GUZMAN SULAYAO,

                Petitioner,

      -against-

CHRISTOPHER SHANAHAN, Field Office
Director for the Office of Detention and
Removal Operations for U.S. Immigration and
Customers Enforcement at 201 Varick Street,
New York, NY, et al.,

                Respondents.
-----------------------------------------------------------x

09 Civ. 7347 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        Petitioner Allan de Guzman Sulayao is a lawful permanent resident of the United States who is being detained at the Orange County Jail pending a removal determination. (Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Verified Petition") ¶¶ 1, 11.) Sulayao brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his mandatory detention as a criminal alien under 8 U.S.C. § 1226(c). Petitioner asks this Court to issue a writ ordering respondents to release him on his own recognizance or to grant him a bond hearing so that an Immigration Judge can make an individualized bond determination. Petitioner also asks this Court to preliminarily enjoin respondents from transferring him outside the jurisdiction of the New York City Field Office of Detention and Removal Operations.

## BACKGROUND

I. Factual Background

On or about September 1, 2001, petitioner entered the United States on a fiancé visa. (Exhibit B to Declaration of Scott Roehm in Support of Application for Order to Show Cause and Petition for Writ of Habeas Corpus ("Roehm Decl.").) Petitioner was arrested on December 28, 2001, and on November 22, 2004, he was convicted of assault in the first degree, N.Y. Penal Law § 120.10(3). (Id.) Petitioner was sentenced to five years in prison. (Verified Petition ¶ 11.)

On January 2, 2009, petitioner was "released from incarceration to parole supervision." (Id. ¶ 14.) On April 13, 2009, the Department of Homeland Security issued a warrant for petitioner's arrest. (Exhibit 6 to Declaration of Assistant United States Attorney Natasha Oeltjen.) Two weeks later, on April 29, 2009, U.S. Immigration and Customs Enforcement ("ICE") took petitioner into "immigration custody while he was attending a regularly scheduled weekly meeting with his parole officer." (Verified Petition ¶ 17.)

ICE asserts that petitioner is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because of his conviction for assault, (Id. ¶ 11), and has initiated removal proceedings.[1] (Id. ¶ 11.) At hearings on May 7, and July 1, 2009, an Immigration Judge told petitioner that he was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). (Id. ¶¶ 19, 21.) On June 24, 2009, petitioner filed in the immigration court a motion to terminate his removal proceedings. (Id. ¶ 20.) , A hearing was held on September 1, 2009.

---

[1] This is the third time ICE has tried to remove petitioner, the other two occurred while petitioner was in state custody. (Id. ¶ 13.) "ICE withdrew the first [removal] charges and Petitioner applied to adjust his status to that of lawful permanent resident in defense to the second charge. The Immigration Judge granted Petitioner's application in the exercise of his discretion and Petitioner became a lawful permanent resident on July 22, 2008." (Id.)

On September 9, 2009, the Immigration Judge denied petitioner's motion to terminate but did not issue a formal opinion. (Letter from Natasha Oeltjen, Assistant United States Attorney, to the Court (Sept. 10, 2009) (the "Oeltjen Letter").) Instead, the Immigration Judge scheduled the next hearing for October 13, 2009, at which time the Immigration Judge will consider whether petitioner is eligible for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h). (Id.)

II. Mandatory Detention of Criminal Aliens

Section 236 of the Immigration and Nationality Act (the "INA"), codified at 8 U.S.C. § 1226(c) provides, in part:

Detention of criminal aliens

(1) Custody

The Attorney General <u>shall</u> take into custody any alien who . . .

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . .

<u>when the alien is released</u>, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General <u>may release an alien described in paragraph (1)</u> only [under limited circumstances related to witness protection and not applicable to petitioner.]

(emphasis added).[2] Section 1226(c) is referred to as the mandatory detention provision because section 1226(c)(1) requires the Attorney General to take certain aliens into custody, and those

---

[2] The full text of section 1226 is attached at Appendix A. Although section 1226 grants authority to the "Attorney General," both petitioner and respondent agree that authority now resides with the Department of Homeland Security, which arrested and is detaining petitioner.

aliens cannot be released unless they satisfy the very narrow requirements set forth in section 1226(c)(2), none of which apply to petitioner.

Petitioner is charged with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) for committing an aggravated felony. (Verified Petition ¶ 11.) Petitioner's offense is thus covered by section 1226(c)(1)(B), which authorizes mandatory detention of an alien who is deportable by reason of having committed an offense covered in section 1227(a)(2)(A)(iii).

Petitioner argues, however, that section 1226(c) cannot apply to him because he was not taken into custody by ICE "when . . . released" from state prison. Instead, he was taken into custody nearly four months after his release. According to petitioner, the language "when . . . released" should be read to mean at the time of release and not at a subsequent time. Therefore, petitioner argues that his detention is authorized under section 1226(a), but not section 1226(c). Section 1226(a) affords aliens the possibility of a bond hearing.

Respondent argues that, as a matter of prudence, this Court should require petitioner to exhaust his administrative remedies which will give ICE the ability to correct any error before judicial intervention. Alternatively, respondent argues that section 1226(c) is ambiguous, and should mean at or after the time of release. It further argues that this interpretation would give deference to the Board of Immigration Appeals' ("BIA") construction of section 1226(c), as set forth in Matter of Rojas, 23 I&N Dec. 117 (2001).

For reasons explained below, I conclude exhaustion would be futile and that the BIA's interpretation of section 1226(c) is permissible. The motion for a preliminary injunction is denied. The petition for a writ of habeas corpus is denied without prejudice. The Court will retain jurisdiction and set a date for a further conference in this matter.

DISCUSSION

I. <u>Jurisdiction and Venue</u>

This Court has subject matter jurisdiction to review the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(a) & (c). Section 1226(e) of the INA provides, in part, that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Petitioner has not challenged the Attorney General's discretion. Instead, petitioner has challenged "the statutory framework that permits his detention without bail." <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003). The Supreme Court has determined that section 1226(e) does not deprive district courts of jurisdiction to hear such a challenge. <u>Id.</u>

Neither party has contested this Court's personal jurisdiction. Venue is proper because "a substantial part of the events . . . giving rise to the claim occurred" within this district. 28 U.S.C. § 1391(e).

II. <u>Exhaustion</u>

Both parties agree that there is no statutory requirement for petitioner to exhaust his administrative remedies before judicially challenging his mandatory detention. If, as is the case here, "Congress has <u>not</u> explicitly required exhaustion, judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative exhaustion under certain circumstances." <u>Bastek v. Federal Crop Ins. Corp.</u>, 145 F.3d 90, 94 (2d Cir. 1998). Futility is one of those circumstances. <u>Cave v. E. Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 249 (2d Cir. 2008).

Requiring petitioner to exhaust his administrative remedies would be futile. An Immigration Judge twice has told petitioner that he is subject to mandatory detention. (Verified Petition ¶¶ 19, 21.) Appealing this decision to the BIA would be futile because the BIA recently

reaffirmed the interpretation of section 1226(c) which subjects aliens like petitioner to mandatory detention. Matter of Desai, 2008 WL 4420039 (B.I.A. Sept. 16, 2008) (unpublished).

III. Interpretation of Section 1226(c)

    A. Section 1226(c) Is Ambiguous

There is no controlling Supreme Court or Second Circuit precedent interpreting the phrase "when the alien is released" contained in section 1226(c)(1) of the INA.[3] The BIA, the administrative agency tasked with interpreting the INA, has interpreted section 1226(c), and has determined that it is applicable to aliens like petitioner, who were taken into custody after their release from state incarceration. Rojas, 23 I&N Dec. at 125.

Under the two-step analysis set forth in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), this Court must first determine whether section 1226(c) is ambiguous. If it is unambiguous, then Congress's clearly expressed intent is binding upon this Court and the BIA. Id. at 842-43. If, however, section 1226(c) is ambiguous, this Court must proceed to the second step of the Chevron analysis, and determine whether the BIA's interpretation is permissible. Id. at 843.

"Statutory analysis begins with the plain meaning of a statute." Natural Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001). Words should be given their "ordinary sense." Id. "[T]he meaning of statutory language, plain or not, depends on context." Bailey v. United States, 516 U.S. 137, 145 (1995) (quotation marks omitted) (alteration in original). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. Muszynski, 268

---

[3] Two judges in this district have interpreted the language of section 1226(c), but in different contexts. In Garcia v. Shanahan, the court held that "[t]he mandatory detention provision cannot be retroactively applied to aliens who were released from custody for removable offenses prior to October 9, 1998 – even if they are later released from custody for a nonremovable offense." 615 F. Supp. 2d 175, 182 (S.D.N.Y. 2009). In Mitchell v. Orsino, the court held that "when . . . released" only applied to an alien's release from custody for the offense that rendered the alien removable. No. 09 Civ. 7029 (PGG), 2009 WL 2474709, at *3 ("It is clear from the language of § 1226(c) that 'when the alien is released' refers to release from custody for one of the enumerated removable crimes."). The interpretations proffered by the parties, here, do not appear to have been at issue in these cases.

F.3d at 98. "when determining which reasonable meaning should prevail, the text should be placed in the context of the entire statutory structure." Id.

Section 1226(c) is ambiguous. This ambiguity results from the interaction of its two constituent paragraphs. Section 1226(c)(2) contains the phrase, "an alien described in paragraph (1)." Section 1226(c)(1), requires the Attorney General to take into custody an alien described in sections 1226(c)(1)(A) through (D) "when the alien is released" from custody or incarceration. There are two plausible interpretations to the phrase "an alien described in paragraph (1)" (contained in section 1226(c)(2)): (1) it refers only to the classes of aliens described in section 1226(c)(1)(A) through (D); or (2) it refers to the classes of aliens described in section 1226(c)(1)(A) through (D) who are taken into custody "when . . . released." If the first, it would include aliens like petitioner, who fall within one of the classes of aliens described in sections 1226(c)(1)(A) through (D), but were not taken into custody immediately upon their release from incarceration. If the second, it would exclude the petitioner, and individuals like him, from mandatory detention because they were not immediately detained upon their release.

Both interpretations are reasonable. One court has stated that if "'when the alien is released' does not describe the class of aliens who are to be detained by the Attorney General, it would doom that clause to removable surplusage." Waffi v. Loiselle, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007); accord Scarlett v. U.S. Dep't of Homeland Sec. Bureau of Immigration and Customs Enforcement, __ F. Supp. 2d __, 2009 WL 2025336, at *5 (W.D.N.Y. Jul. 10, 2009). But, it is plausible that the "when . . . released" phrase may describe the moment when the Attorney General has the obligation and authorization to detain a criminal alien. See Saucedo-Tellez v. Perryman, 55 F. Supp. 2d 882, 885 (N.D. Ill. 1999) ("It is possible that the phrase 'when the alien is released' modifies only 'alien' requiring the INS to act at the moment of release. It is

also possible, however, that the timing phrase modifies 'Attorney General' and the scope of her mandate allowing the INS to arrest the criminal alien any time after he is released from criminal custody.").

The word "when," as used in the phrase "when the alien is released," is ambiguous. As several courts have recognized, "when" can "include[] the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." Waffi, 527 F. Supp. 2d at 488 (citing 20 The Oxford English Dictionary 209 (2d ed. 1989), and citing The American Heritage Dictionary of the English Language (4th ed. 2000)). "When" can also mean "at or during the time that." Concise Oxford English Dictionary (11th ed. rev. 2008). These different definitions lead to two different meanings of the phrase "when the alien is released," and therefore, two different conclusions as to whether petitioner's detention is authorized by section 1226(c). Applying the first meaning, the phrase "when the alien is released" would mean "at the time that the alien is released," and petitioner's detention may not be authorized under section 1226(c). If the second definition is used, however, the phrase means "at or during the time that the alien is released." This definition would authorized petitioner's detention because he was taken into custody while on parole, i.e., during his release.

Although this Court concludes that the phrase is ambiguous, the Court recognizes that other district courts have found section 1226(c) unambiguous and that have found it does not apply to aliens like petitioner, who were not taken into custody immediately upon their release. For example, in Quezada-Bucio v. Ridge, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004), the court determined that:

> The clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of

> release. Thus, if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language 'after the alien is released,' 'regardless of when the alien is released,' or other words to that effect. Instead, Congress chose the word 'when,' which connotes a much different meaning.

(internal citations and quotations omitted).

In Waffi, the court held that section 1226(c) did not apply to an alien who was taken into custody over a month after his release from state custody. Id. at 488. The court determined that section 1226(c) was not ambiguous because the term "when" unambiguously "includes the characteristic of immediacy." Id. In addition, the court found that the BIA's interpretation of the mandatory detention statute renders null the phrase "when the alien is released." Id. Other cases are in accord. See, e.g., Scarlett, 2009 WL 2025336, Oscar v. Gillen, 595 F. Supp. 2d 166 (D. Mass. 2009), but see Serrano v. Estrada, No. 3-01-CV-1916-M, 2002 WL 485699 (N.D. Tex. Mar. 6, 2002). For the reasons noted above, this Court respectfully disagrees.

B. The BIA's Interpretation Is Entitled to Chevron Deference

Because section 1226(c) is ambiguous, and there is no controlling precedent, this Court must determine whether the BIA's interpretation of that statute is permissible. Chevron, 467 U.S. at 843. This Court "review[s] the BIA's interpretation of ambiguous provisions of the INA . . . with substantial deference to the BIA, rejecting its interpretation only if it is 'arbitrary, capricious, or manifestly contrary to the statute.'" Evangelista v. Ashcroft, 359 F.3d 145, 150 (2d Cir. 2004) (quoting Chevron, 467 U.S. at 844) (internal citations omitted).

In Rojas, the BIA interpreted section 1226(c) to include aliens such as petitioner, who were not taken into custody immediately upon release from incarceration. It first determined that section 1226(c) was ambiguous because the phrase "an alien described in paragraph (1)" contained in section 1226(c)(2) "does not unambiguously tell us whether it

encompasses the 'when the alien is released' clause in [section 1226(c)(1)] or merely references the four categories of aliens described in subparagraphs (A) through (D)." Id. at 120.  To resolve this ambiguity, the BIA analyzed the statute in light of four separate considerations; (1) the ordinary meaning of the statute's language, though ambiguous, (2) the overall statutory context and goals, (3) the statute's predecessor provisions, and (4) practical considerations.  Id. at 121-24.

First, examining the plain language of section 1226(c), the BIA determined that the phrase "an alien described in paragraph (1)" "seems . . . most appropriately to be a reference to an alien described by one of four subparagraphs, (A) through (D)" because "[t]he 'description' of the alien does not naturally appear to include any or all of the concluding clauses of paragraph (1) . . . ." Id. at 121.  The BIA found that:

> [the] "when released" clause is no more a part of the description of an alien who is subject to detention than are the other concluding clauses . . . [which] simply make it plain that the duty to detain is not affected by the character of an alien's release from criminal incarceration or the possibility that an alien may be rearrested on criminal charges.

Id.  The BIA then examined Congress's intent in enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which contained section 1226(c).  It found that "Congress was frustrated with the ability of aliens, and particularly criminal aliens, to avoid deportation if they were not actually in [INS] custody when their proceedings were complete." Id. at 122. After reviewing several other parts of the INA, the BIA stated: "we discern that the statute as a whole is focused on the removal of criminal aliens in general, not just those coming into [INS] custody 'when . . . released' from criminal incarceration." Id. at 122.

Turning to prior versions of the INA, the BIA found instructive former section 242(a)(2), as amended by certain enactments in 1990 and 1991.  That provision stated:

- 10 -

> (A) The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release in on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense). Notwithstanding paragraph (1) or subsections (c) and (d) but subject to subparagraph (B), the Attorney General shall not release such felon from custody.
>
> (B) The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

8 U.S.C. § 1252(a)(2) (1992). The BIA found this provision helpful because the requirements of paragraph (B) applied to all aggravated felons, not just those that were taken into custody at the time of their release. Id. at 123-24.

Finally, the BIA recognized that interpreting section 1226(c) to apply only to those aliens taken into custody immediately upon release would cause practical and analytical problems: "it is not clear where the line would be drawn under [the alien's] reading of the statute. Would mandatory detention apply only if an alien were literally taken into custody 'immediately' upon release, or would there be a greater window of perhaps 1 minute, 1 hour, or 1 day?" Id. at 124.

Reviewing the BIA's interpretation of section 1226(c), this Court cannot conclude that it is "arbitrary, capricious or manifestly contrary to the statute." Chevron, 467 U.S. 843-44 & n.11 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."). It is a permissible interpretation of an ambiguous text, and one that is supported by logic and the legislative history of the statute.

IV. <u>Petitioner's Due Process Argument Is Premature</u>

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "liberty . . . without due process of law." It "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001). In <u>Demore v. Kim</u>, the Supreme Court rejected a facial challenge to the constitutionality of section 1226(c), holding that "[d]etention during removal proceedings is a constitutionally permissible part of that process." 538 U.S. at 531. The <u>Demore</u> court also rejected an "as applied" challenge to the respondent alien. The alien in that case had been in custody for approximately six months (although he had requested and received a continuance of approximately one month). <u>Id.</u> at 530-31 & n.15. Because petitioner has been in custody for less than five months, <u>Demore</u> forecloses his due process challenge at this time.

V. <u>The Relief Requested Is Not Mandated By Section 1226(a)</u>

The crux of petitioner's argument is that he is entitled to an individualized bond hearing pursuant to section 1226(a), or alternatively, to be released on his own recognizance. Nothing in the plain language of section 1226(a) requires that an alien detained pursuant to that statute be granted a bond hearing or permits an alien to be released on his own recognizance. In fact, section 1226(a) gives the Attorney General the option of continuing to detain the alien or to release the alien on bond or conditional parole. 8 U.S.C. § 1226(a) (stating that for an arrested alien, "the Attorney General – (1) may continue to detain the arrested alien; and (2) may release the alien" on bond or conditional parole). Petitioner has not provided any authority supporting the conclusion that ICE is required to grant a bond hearing to an alien detained under section

1226(a). This Court has not found any authority from the Supreme Court or the Second Circuit which would require ICE to do so.

The only Court of Appeals to address the issue is the Ninth Circuit. That court held in <u>Casas-Castrillon v. Dept. of Homeland Sec.</u>, that section 1226(a) requires an individualized bond hearing. 535 F.3d 942, 951 (9th Cir. 2008) ("Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as <u>requiring</u> the Attorney General to provide the alien with such a hearing.") (citing <u>Tijani v. Willis</u>, 430 F.3d 1241, 1242 (9th Cir. 2005)). The decision in <u>Casas-Castrillon</u>, in which the alien in question had been detained for seven years, was based on due process concerns regarding the length of the alien's detention. <u>Id.</u> As stated above, those concerns are not present in this case, at this time.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus and request for a preliminary injunction (Docket No. 1) is DENIED without prejudice. The Court is aware that due to the Immigration Judge's decision on September 9, 2009, and petitioner's attempt to seek a waiver of inadmissibility, petitioner may continue to be detained after his next hearing in front of the Immigration Judge, on October 13, 2009. Therefore, the Court will maintain jurisdiction over this petition. In the event petitioner remains in custody as of October 31, 2009, the parties are invited to address, in written submission to be filed by November 13, 2009, whether petitioner's continued detention, without an individualized hearing to determine if there are terms and conditions that would reasonably assure petitioner's appearance if he were released,

amounts to a deprivation of liberty without due process of law. A conference will be held on November 24, 2009, at 2:00 p.m.

    SO ORDERED.

                                              P. Kevin Castel
                                      United States District Judge

Dated: New York, New York
       September 14, 2009

APPENDIX A

8 U.S.C. § 1226:

Apprehension and detention of aliens

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General--

(1) may continue to detain the arrested alien; and

(2) may release the alien on--

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but

(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

(b) Revocation of bond or parole

The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, re-arrest the alien under the original warrant, and detain the alien.

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who--

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [FN1] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

- 1 -

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

(d) Identification of criminal aliens

(1) The Attorney General shall devise and implement a system--

(A) to make available, daily (on a 24-hour basis), to Federal, State, and local authorities the investigative re-sources of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;

(B) to designate and train officers and employees of the Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and

(C) which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony, and indicates those who have been removed.

(2) The record under paragraph (1)(C) shall be made available--

(A) to inspectors at ports of entry and to border patrol agents at sector headquarters for purposes of immediate identification of any alien who was previously ordered removed and is seeking to reenter the United States, and

(B) to officials of the Department of State for use in its automated visa lookout system.

(3) Upon the request of the governor or chief executive officer of any State, the Service shall provide assistance to State courts in the identification of aliens unlawfully present in the United States pending criminal prosecution.

(e) Judicial review

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to re-view. No court may set aside any action or

- 3 -

decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.